## IN RE 2001 REDISTRICTING CASES.

### No. S–10615.

Supreme Court of Alaska.

May 24, 2002.

---

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

### Order

In consideration of the appeal from the May 9, 2002 final judgment of the superior court, including its Memorandum and Order of May 9, 2002, and after hearing oral argument on May 24, 2002,

IT IS ORDERED:

■ 1. The Redistricting Board issued its Amended Final Plan and Proclamation of Redistricting on April 25, 2002 after this court issued its March 21, 2002 order holding unconstitutional several aspects of the board's June 18, 2001 Proclamation Plan and remanding.[1] Because the board's Amended Final Plan (the plan) fully complies with our March 21 order and is not otherwise unconstitutional, we AFFIRM the superior court's May 9, 2002 order upholding the plan.[2] We adopt the attached portions of Superior Court Judge Mark Rindner's May 9 decision and provide the following additional reasons for our decision.

■ 2. The Luper appellants argue that the 9.96% maximum statewide deviation in the plan is too great, and that positive deviations in the Kenai Peninsula Borough and Anchorage Bowl districts are also unconstitutionally excessive. As to Anchorage, their claim is meritless: we ordered the board to make a good faith effort to reduce deviations across the Anchorage Bowl districts,[3] and the board has clearly done so.[4] The remaining challenges could have been raised against the original Proclamation Plan but were not; thus they cannot be raised for the first time at this late date.[5] Accordingly, we need not decide whether statewide devia-

---

1. *In re 2001 Redistricting Cases*, 44 P.3d 141 (Alaska 2002).

2. We review redistricting plans "de novo upon the record developed in the superior court." *Groh v. Egan*, 526 P.2d 863, 867 (Alaska 1974) (interpreting Alaska Constitution article VI, section 11, which provides that claims of errors in redistricting "shall be reviewed by the supreme court on the law and the facts").

3. *In re 2001 Redistricting Cases*, 44 P.3d at 146.

4. On remand the board reduced the maximum deviation in the Anchorage Bowl area from 9.5% to 1.35%.

5. Article VI, section 11 requires that applications to compel the board to correct any error in redistricting "must be filed no later than thirty days following the expiration of the ninety-day period specified in this article." The claimed errors regarding the Kenai Peninsula Borough districts and statewide deviations concern aspects of the Final Amended Plan that were largely carried over from the June 18, 2001 Proclama-

tions under 10% remain prima facie constitutional following the 1998 amendment to article VI, section 6.[6]

3. The Luper appellants argue that the Eagle River–Chugiak area is a socio-economically integrated area that should not have been divided, and they object to this community being combined with the other communities in House Districts 16, 18, and 32. While the Eagle River–Chugiak area is socio-economically integrated, its residents have no constitutional right to be placed in a single district.[7] The only relevant related inquiry is whether the districts in which Eagle River–Chugiak was placed are socio-economically integrated.

■ House District 18 is sufficiently socio-economically integrated as a matter of law because it lies entirely within the Municipality of Anchorage.[8] House District 16 is socio-economically integrated because it combines communities within the Municipality of Anchorage with areas north and east of the Municipality.[9] House District 32 is socio-economically integrated because communities within the Municipality of Anchorage are so-

cio-economically integrated as a matter of law,[10] and we have previously upheld a district combining the northern Kenai peninsula with Anchorage.[11]

■ The Luper appellants also argue that the natural and local government boundaries of the Eagle River–Chugiak area should have been "recognized." But the plain language of the Alaska Constitution indicates that respecting local government boundaries is discretionary.[12] Further, the appellants have not demonstrated that any failure by the board to follow natural boundaries violates article VI, section 6. As Judge Rindner observed, "respect for neighborhood boundaries is an admirable goal," but "it is not constitutionally required and must give way to other legal requirements." [13] Therefore, the districts containing the Eagle River area are not unconstitutional in any respect.

■ 4. The Luper appellants argue that two "appendages" along the southwest and southeast borders of House District 18 render this district non-compact,[14] and that the southwest appendage also renders House District 23 non-compact. But the Luper ap-

tion Plan. The Proclamation Plan was published on the last day of the ninety day period specified in article VI, section 11. Accordingly, the relevant deadline for these claims was July 18, 2001, but the appellants did not raise these claims until after the board promulgated its Final Amended Plan on April 25, 2002.

6. As a result of the 1998 amendment, Alaska Constitution article VI, section 6 provides that "[e]ach [house district] shall contain a population as near as practicable to the quotient obtained by dividing the population of the state by forty." In our March 21, 2002 order we interpreted this new clause to mean that "article VI, section 6 will in many cases be stricter than the federal threshold," *In re 2001 Redistricting Cases*, 44 P.3d at 146, and held that Anchorage Bowl deviations slightly under the 10% federal threshold were nonetheless unconstitutionally excessive. *Id.* at 146; *but see id.* at 150–52 (Carpeneti, J., dissenting).

7. *See In re 2001 Redistricting Cases*, 44 P.3d at 145 ("Dividing the [socio-economically integrated Delta Junction] area does not violate the constitutional requirement that districts be socio-economically integrated so long as each portion is integrated, as nearly as practicable, with the district in which it is placed.").

8. *See In re 2001 Redistricting Cases*, 44 P.3d at 146 ("Anchorage is by definition socio-economi-

cally integrated."); *see also Hickel v. Southeast Conference*, 846 P.2d 38, 52 (Alaska 1992) ("[A] borough is by definition socio-economically integrated."); *id.* at 51 (quoting AS 29.05.031) ("By statute, a borough must have a population which 'is interrelated and integrated as to its social, cultural, and economic activities.' ").

9. *See In re 2001 Redistricting Cases*, 44 P.3d at 144 n. 7. ("[A]ny neighboring areas north, east, or south [of the Municipality of Anchorage and the Matanuska–Susitna Borough] would meet the constitutional requirement of relative socio-economic integration.").

10. *See In re 2001 Redistricting Cases*, 44 P.3d at 146.

11. *Kenai Peninsula Borough v. State*, 743 P.2d 1352, 1362–63 (Alaska 1987).

12. Article VI, section 6 of the Alaska Constitution provides: "Consideration may be given to local government boundaries."

13. Memorandum & Order of May 9, 2002, p. 4.

14. *See* Alaska Const. art. VI, § 6 ("Each house district shall be formed of contiguous and compact territory containing as near as practicable a relatively integrated socio-economic area.").

pellants propose to remedy the southwest appendage by placing all of Government Hill in District 23. This would substantially increase the population deviations between these districts and would thereby violate our prior order requiring "minimal population deviations" in Anchorage.[15] Accordingly, we hold that this appendage does not render the district non-compact. We further hold that the Luper appellants' challenge to the southeast appendage is not timely.[16]

██ 5. Finally, the Luper appellants contend that House District 32 is non-compact because it is too large, much of its area is unpopulated and roadless, and its population is unevenly distributed. But neither size nor lack of direct road access makes a district unconstitutionally non-compact, and population distributions are largely irrelevant to the compactness inquiry.

6. We therefore conclude that House Districts 18, 23, and 32 are constitutional in all respects.

Entered at the direction of the court.

## APPENDIX *

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA THIRD JUDICIAL DISTRICT AT ANCHORAGE

IN RE 2001 REDISTRICTING CASES, Plaintiffs,

v.

REDISTRICTING BOARD, et al, Defendants.

**Consolidated Case No. 3AN-01-8914 CI**

1KE-01-0316 CI 3AN-01-8996 CI

4FA-01-1592 CI 3AN-01-8908 CI

4FA-01-1608 CI 3AN-01-9026 CI

3VA-01-0040 CI 3AN-01-8995 CI

*MEMORANDUM AND ORDER REGARDING AMENDED FINAL REDISTRICTING PLAN*

On March 22, 2002, this court remanded the June 18, 2001 Final Plan and Proclama-

tion for Redistricting to the Alaska Redistricting Board (the Board) for formulation of a new final plan complying with the Order of the Alaska Supreme Court issued March 21, 2002. In that order the Alaska Supreme Court found certain districts of the Board's plan unconstitutional and directed the Board to reconsider other aspects of the plan. Pursuant to these orders, the Board reconvened on April 12, 13, and 18, 2002 and unanimously passed an amended Plan that it believed complied with the order of the Supreme Court.

On April 19, 2002 the Board filed a motion to expedite notice of compliance and request for entry of final judgment. In light of the upcoming candidate filing deadline for the 2002 elections of June 1, 2002 and in accordance with the requirements of Article VI, Section 11 of the Alaska Constitution, which requires this court to expedite its redistricting decisions, "affording them priority over all other matters," this court ordered that any objections to the Board's motion be filed by May 1, 2002. The Board's response was ordered to be filed by May 8, 2002 with the expectation that a decision would be entered by May 13, 2002. In order to provide notice of this schedule to the greatest extent possible, the Board was ordered to post the court-imposed schedule on its website.

After receiving the objections to the Plan discussed below this court held a status conference on May 6, 2002 to discuss the need for further proceedings in this case. Notice of the status hearing was again posted on the Board's website. At the May 6, 2002 status conference the parties disputed whether a further evidentiary hearing would be needed or whether the legality of the plan could be decided based on the pleadings of the parties. This court indicated that it would review the pleadings once the Board had filed its response and would issue a decision by May 10,

---

**15.** *In re 2001 Redistricting,* 44 P.3d at 146.

**16.** The Luper appellants candidly admitted at oral argument that they did not previously challenge the southeast appendage extending into Muldoon even though this appendage existed in

the board's original Proclamation Plan of June 18, 2001.

* The superior court's opinion has been edited to conform with our technical rules.

2002 indicating whether a further evidentiary hearing was needed and, if so, on what issues. In the event an evidentiary hearing was necessary the hearing was tentatively scheduled for May 13, 2002.

Having reviewed the objections to the Board's amended plan and the Board's response to those objections, this court concludes that no evidentiary hearing is necessary to resolve the objections to the Amended Redistricting Plan. This court further concludes that the Amended Redistricting Plan fully complies with the Order of the Alaska Supreme Court dated March 21, 2002 and is constitutional in all respects.

The objections to the Board's amended plan fall into three categories. First, the court has received a number of letters from various individuals who, for the most part, were not parties to the original litigation.[1]

Most of these letters are from residents of Chugiak or Eagle River who complain about the manner in which these areas were placed into house and/or senate districts. Second, objections have been filed by certain Anchorage plaintiffs (those plaintiffs known as the Luper Plaintiffs in previous proceedings in this case along with the Municipality of Anchorage and Terry Martin). The concerns raised by these plaintiffs mirror many of the concerns raised in the letters discussed above. The Luper plaintiffs also contend that House Districts 23 and 18 are not constitutionally compact; that the plan violates the requirements of equal representation; and that District 32 is not compact. . . .

Each of these objections to the amended final plan will be discussed.

**A.** *Citizen Letters*

Six of the seven letters received by the court are from Chugiak or Eagle River residents who primarily complain that their neighborhood boundaries were not respected. Some of the authors complain that they are part of a house district, which includes the

residents of the Matanuska–Susitna Valley. Others complain that Eagle River is a distinct neighborhood that should not be joined with other neighborhoods in Anchorage. The June 18, 2001 plan originally proposed by the Board placed the Eagle River–Chugiak area into two complete house districts, neither of which contained population from the Matanuska–Susitna Valley. A purported justification for this plan was the need to respect neighborhood boundaries in the Anchorage area. This court found House District 16 under the June 18, 2001 plan to be insufficiently compact despite the Board's effort to justify the shape of that district on the need to preserve neighborhoods. The Alaska Supreme Court also rejected the Board's position that respect for neighborhood boundaries justified the deviations in the Anchorage districts, holding "Anchorage neighborhood patterns cannot justify 'substantial disparities' in population equality across Anchorage districts." *See* Supreme Court Order No. 39 (March 21, 2002), at pp. 8–9. While respect for neighborhood boundaries in the redistricting process is an admirable goal, it is not constitutionally required and must give way to other legal requirements.

The Alaska Supreme Court also rejected the notions that communities within the Anchorage area are socially and economically distinct. The court held: "Anchorage is by definition socio-economically integrated and its population is sufficiently dense and evenly spread to allow multiple combinations of compact contiguous districts with minimal population deviations." *Id.* at p. 9; *see also Groh v. Egan,* 526 P.2d 863, 878–79 (Alaska 1974). The Alaska Supreme Court further recognized the permissibility of combining portions of the Matanuska–Susitna Borough with the Municipality of Anchorage noting that "any neighboring areas north, east or south of the combined municipalities would meet the constitutional requirement of relative socio-economic integration." Supreme Court Order No. 39 at p. 4–5, n. 7. Implicit in the Supreme Court's order is the notion that it would be constitutionally permissible for

---

1. The court has received letters from Carl Disotell, Debbie Ossiander, Lee B. Jordan, Terry Martin, Randy Phillips, Janet S. Seitz, and Susan Gorski. Although as a technical matter these citizens did not move to intervene in this proceeding, the court has considered the objections raised by these citizens.

the Board to combine portions of the Municipality of Anchorage with portions of the Matanuska–Susitna Borough.

Some of the letter writers have also complained about Senate District P arguing either that this district is not composed of socio-economically integrated areas or that these districts are not contiguous or compact. However, Article VI, Section 6 only requires that senate districts be composed of two contiguous house districts. Senate District P meets this requirement.

The objections raised by the various letter writers are without legal merit and do not provide a basis for overturning any portion of the amended final plan. None of the objections raised by the letter writers as to House Districts 16, 32, 18, and Senate District P are legally valid. The court finds that these districts fully satisfy the requirements of Alaska and federal law.

B. *Objections of Luper Plaintiffs*

The Anchorage plaintiffs along with Terry Martin object to the amended final plan for a number of reasons. First, these plaintiffs contend that the Plan is a "partisan gerrymander." They make this assertion based on the claim that the amended plan pairs 18 Republican incumbents against one another and zero Democrats. This number does not appear to be correct.[2] Regardless of the correct number, however, there is no evidence that the Amended Final Plan invidiously minimizes the right of any politically salient class to an equal effective vote. *See* Alaska Supreme Court Order No. 39, at p. 5 & n. 8. There is no evidence that this plan fences Republicans out of the political process or invidiously minimizes their voting strength. *Id.* The claim of "partisan gerrymander" was raised by certain plaintiffs and rejected by this court as to the original June 18, 2001 plan. *See* Memorandum and Order (February 1, 2002) at pp. 73–77. Applying the same legal standards utilized in that decision, the claim of partisan gerrymander is

likewise rejected as to the Amended Final Plan.

The Luper plaintiffs also assert that House Districts 23, 18, and 32 are not compact. This court discussed the standards for reviewing the requirement of compactness contained in Article VI, Section 6 of the Alaska Constitution both in its order of December 31, 2001 granting the Ruedrich plaintiffs Motion for Summary Judgment re: Lack of Compactness of House District 16 and in its Memorandum and Order of February 1, 2002 regarding the June 18, 2001 Plan. The Alaska Supreme Court affirmed that portion of this court's February 1, 2002 Memorandum and Order in its March 21, 2002 order. *See* Alaska Supreme Court Order No. 39 at 2. Applying the same standards used to review this issue in this court's prior rulings, and recognizing that the Board was required to shift census blocks in order to minimize population deviations in Anchorage as required by the order of the Alaska Supreme Court, this court finds that House Districts 18, 23 and 32 all satisfy the compactness requirement contained in Article VI, Section 6 of the Alaska Constitution.

Finally, the Luper plaintiffs object to the population deviations in the amended Final Plan and seek another remand with direction to further reduce deviations statewide, particularly in Anchorage and the Kenai Peninsula Borough. The Supreme Court held that deviations from ideal size in the Anchorage District were unconstitutional and required the Board on remand to make a good faith effort to further reduce the deviations. The Board has done so. Districts within the Anchorage bowl are all within 1.1% of ideal district size and have an overall deviation of only 1.35%. As to Anchorage the Alaska Supreme Court recognized that "Anchorage is by definition socio-economically integrated, and its population is sufficiently dense and evenly spread to allow multiple combinations of compact, contiguous districts with minimal population deviations." *Id.* at 9. No such observation was made as to other parts of the state where reducing population devia-

---

**2.** The evidence indicates that in actuality 16 Republican incumbents are placed in shared districts while one Democrat incumbent is paired with a Republican incumbent. *See* Exhibit A to Memorandum in Support of Objection to Amended Redistricting Plan filed by the Luper Plaintiffs.

tions below ten percent is more problematic in light of the other requirements of Article VI, Section 6 of the Alaska Constitution. Thus, the Alaska Supreme Court did not require the Board to reduce population deviations statewide. Rather, the only deviations the Alaska Supreme Court required the Board to adjust were deviations in the Anchorage house districts and in House District 40. All other aspects of the June 18, 2001 Plan regarding population deviation were affirmed by the court.

As to population deviation the Amended Final Plan fully complies with the Order of the Alaska Supreme Court. None of the population deviations in the Amended Plan violate the equal protection requirements of the Alaska Constitution.

. . . .

### CONCLUSION

Upon consideration of the Notice of Compliance filed by the Alaska Redistricting Board, all objections thereto and upon full consideration of the record before this court in this proceeding, this court finds the Final Plan and Proclamation of Redistricting dated June 18, 2001, as amended by the Alaska Redistricting Board on April 13 and 18, 2002 to be reasonable and constitutional in all respects, and in full compliance with the order of this court dated February 1, 2002 and the order of the Supreme Court, dated March 21, 2002. A final judgment to this effect is being entered concurrently with the issuance of this opinion.

DATED at Anchorage, Alaska this 9th day of May 2002.